### COLLISION BETWEEN VEHICLE AND ELECTRIC CAR.

Circuit Court of Cuyahoga County.

THE CLEVELAND ELECTRIC RAILWAY COMPANY v. GEORGE A. BOLTZ.

Decided, November 19, 1905.

*Evidence—Witnesses—Street Railways—Duty to Keep Cars Under Control—Opinion Evidence Based Upon Results Inadmissible—Where Evidence Impeaching Witness Confined to Matter in Deposition.*

1. Where the opinion of a witness as to rate of speed of a car is based upon the results of a collision, his evidence should be excluded.
2. Where evidence of one who was a witness at a former trial is taken by deposition, the evidence of one called to contradict him must be limited to matters about which he was examined when the deposition was taken.
3. It is error to charge that it is the duty of the company to operate its cars in a safe manner and keep them under control.

*Squire, Sanders & Dempsey,* for plaintiff in error.
*N. Marks Flick,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

Plaintiff below, defendant in error, was a liveryman and on October 20, 1901, he let a rig, consisting of a trap and a pair of cob horses, to two young men, who with three others, their friends, were driving westerly on Francis street in the city of Cleveland, and turning into Willson avenue, a street running north and south, when the accident complained of occurred.

It seems that the team drove out of Francis street on a trot and the pole of the trap struck the right-hand front corner of a

car belonging to plaintiff in error which was proceeding norther-
ly on the westerly track on Willson avenue.   One of the horses
was thrown down and so injured that he had to be shot; the
other horse was somewhat injured and the trap was damaged.

The liveryman brought his action against the railway company
alleging negligence on its part in the operation of its car, in
that the same was run at a reckless and dangerously high rate
of speed, was not kept under control by the motorman and no
gong or other warning was given as it approached the inter-
section of the two streets named.

Verdict and judgment being for the plaintiff below, the case
was brought here upon petition in error alleging numerous
errors, all of which we have considered, but this opinion will
briefly review only those errors occurring on the trial of the
case on account of which we think the judgment should be re-
versed.

On page 56 of the record it appears that George White, one of
the young men who was in the rig, was asked:

"Q.   Now, when you saw this car I will ask you to give us
about the rate of speed, in your judgment?"

Over the objection of the defendant the witness was permitted
to answer and said:

"A.   Well, the way we were hit, and the team, I should judge
about seventeen miles an hour."

A motion to exclude this answer was overruled, which we think
was clearly erroneous; the witness had previously stated, page
53, "I just about saw it (the car), being in the back seat," so
that his opinion was evidently based upon the results of the
collision as he says, and not upon any observation of the motion
of the car.

The same witness (page 80) was asked the following question:

"Q.   What was the reason, in fact, that you did not stop
the rig before the collision?"

Over objection of defendant he answered:

"A.  Well, the car was going so fast we didn't have time to get out of the way."

Motion to exclude this answer was overruled, which was error; it was for the jury to say why the team was not stopped; the witness' opinion was incompetent.

The motorman, whose testimony was taken by deposition, was asked upon cross-examination as to certain testimony given by him at a former trial of the case before a justice of the peace; in this manner ground was laid for his contradiction and, on the trial in the common pleas court, B. J. Sawyer was introduced for that purpose.  His examination, however, was not confined to the matters brought to the attention of the motorman and thus the witness Sawyer was allowed to bring to the jury many statements claimed to have been made by the motorman before the justice, which the latter had no opportunity to explain.  This was clearly contrary to law.  *King* v. *Wickes,* 20 Ohio, 88.

Plaintiff's first request to charge was given and is as follows:

"The driver of the trap had a right to presume that the motor car was being run in a safe, prudent and careful manner, and that if the car was approaching a crossing at a dangerously rapid rate of speed, that the person in charge of the motor would give notice of his approach by sounding a gong or bell or otherwise giving notice of his approach."

The use of the word "*safe*" vitiates this charge, and it should not have been given.

It is the duty of the railway company to exercise ordinary care, commensurate with its business; to run its cars in a safe way would be more than is required of prudent and careful men.

Plaintiff's third request, which was given, is as follows:

"It was the duty of the motorman to keep his car under control so that he could stop said car in time to prevent injury to persons who could not see said car on account of obstructions to view caused by the building on the corner."

Such is not the law; all that is required of the motorman is that he exercise ordinary care to keep his car under control.

The charge as requested should not have been given.

Plaintiff's fourth request was given and is open to criticism as charging that it is the duty of the railroad company "to use such ordinary care as to control said car." The phrase is dangerous and misleading; if it means that the ordinary care to be used is such as insures control of the car, it is not the law. The proper expression would be: "to use ordinary care to control said car."

Upon page 302 of the record it appears that defendant's counsel was cross-examining the witness Sawyer as to his memory of what occurred on the trial before the justice of the peace and the following is shown to have occurred:

"Q.  Did you have any other lawsuit the next day in Brown's court?  A. I don't know, Mr. Crawford.

"Exception by defendant.

"THE COURT:  Sustained.

"Q.  Did you have a lawsuit the day before?

"THE COURT:  Sustained.

"Q.  Did you have a lawsuit that week?

"THE COURT:  Sustained.

"MR. CRAWFORD:  There is no objection.

"MR. FLICK:  Well, there is objection to all that.

"THE COURT:  It isn't fair to the witness.

"MR. CRAWFORD:  I except to the remark of the court."

We think it was the trial judge who was not fair under the circumstances; the cross-examination was legitimate and had not been pushed to such extremes as to call forth the remark of the court. Said remark tended to prejudice the defendant's case before the jury.

For the errors enumerated the judgment is reversed.